Coppola v. SSA          CV-12-492-JL          2/21/14

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Matthew Coppola

    v.                                    Civil No. 12-cv-492-JL
                                        Opinion No. 2014 DNH 033
Carolyn Colvin, Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

Matthew Coppola appeals the Social Security Administration's ("SSA") denial of his applications for Disability Insurance Benefits and Supplemental Security Income. An administrative law judge at the SSA ("ALJ"), performing the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), ruled that, despite Coppola's severe impairments--including polysubstance abuse, alcohol dependence, and mood disorder-he retains the residual functional capacity ("RFC") to perform his past relevant work as a landscape laborer and stocker, and is therefore not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council later denied Coppola's request for review of the ALJ's decision, see id. §§ 404.967, 416.1467, with the result that the ALJ's decision became the SSA's final decision on Coppola's applications, see id. §§ 404.981, 416.1481. Coppola then appealed the decision to this

court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Coppola has filed a motion to reverse the decision.  <u>See</u> L.R. 9.1(b)(1).  He argues that the ALJ made errors in performing each of the steps from two to five in the evaluative process. The Commissioner of the SSA maintains that the ALJ committed no error at any step of the process, and has cross-moved for an order affirming the decision.  <u>See</u> L.R. 9.1(d).  After careful consideration, the court agrees with Coppola that the ALJ erred at step four by failing to address the opinion of Coppola's treating psychiatrist when determining Coppola's RFC, and thus grants his motion to reverse (and denies the Commissioner's motion to affirm) the ALJ's decision.

"The sequential evaluation process is a series of five 'steps' that [SSA] follow[s] in a set order." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> The claimant bears the burden, through the first four steps, of proving that he is disabled, i.e., that (1) he is not engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment meets or equals a specific impairment listed in the Social Security regulations; and (4) the impairment prevents or prevented him from performing past relevant work. At the fifth step, the SSA bears the burden of showing that the claimant has the residual functional capacity to perform other work that may exist in the national economy.

2

Gaudreault v. Astrue, 2012 DNH 108, 8 (internal citations omitted).  "All five steps are not applied to every applicant, as the determination may be concluded at any step along the process."  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

Here, the ALJ determined that (1) Coppola is not engaged in substantial gainful activity; (2) he has the severe impairments listed above, i.e., polysubstance abuse, alcohol dependence, and mood disorder; (3) those impairments do not meet or equal a listed impairment; and (4) in light of his RFC, Coppola is able to perform his past relevant work as a landscape laborer and stocker.  Although, as noted in the block quote above, that finding alone was enough for the ALJ to deny Coppola's applications, the ALJ nonetheless proceeded to the next step, finding in the alternative that (5) Coppola also retains the RFC to perform other work (to wit, the jobs of kitchen helper, groundskeeper, and hand packer).  The ALJ accordingly denied Coppola's applications.

As already mentioned, the only one of these determinations Coppola does not contest is the very first.  And, as has also been mentioned, the court--although it does not endorse Coppola's kitchen-sink approach to this appeal--agrees with him that the case must be remanded to the ALJ due to error at step four.  An extensive analysis of Coppola's claims of error at the remaining

steps is therefore not strictly necessary.  Insofar as a
discussion of Coppola's claims regarding those steps might be
useful to the ALJ and the claimant on remand, however, the court
provides such a discussion below.  Cf. Morris v. Astrue, 2012 DNH
175, 25-26 (adopting similar approach).

I.   **Step two**

     Although the ALJ did not conclude the analysis at step two,
and, as just discussed, found that Coppola suffers from three
severe impairments, Coppola argues that the ALJ nonetheless erred
at that step by failing to conclude that Coppola labors under a
laundry list of other severe impairments that were either
identified in his applications or mentioned in his medical
records.  Specifically, Coppola says that the ALJ should have
concluded that he also suffers from schizophrenia, depression,
bipolar disorder, post-traumatic stress disorder, generalized
anxiety disorder, anti-social personality disorder, and conduct
disorder.[1]

---

     [1]Coppola also argues that the ALJ made "no finding, one way
or another, as to whether there are *[sic]* any combination of
impairments that is severe."  Memo. in Supp. of Mot. to Reverse
(document no. 10-1) at 9.  Given the ALJ's specific finding that
Coppola had three severe impairments (polysubstance abuse,
alcohol dependence, and mood disorder), this argument is simply
counterfactual and merits no discussion.

As both Coppola and the Commissioner note, it is well-settled that "an ALJ commits no reversible error at step two by identifying only some of a claimant's impairments as 'severe' so long as he considers the limiting effects of all the claimant's impairments, even those that are not severe, in conducting his analysis in the remaining steps." Taylor v. Colvin, 2013 DNH 106, 2 (quoting 20 C.F.R. § 416.945(e)) (internal quotation marks and alterations omitted); see also Syms v. Astrue, 2011 DNH 138, 3 ("[A]n error at Step Two will result in reversible error only if the ALJ concluded the decision at Step Two, finding no severe impairment."). Coppola protests that the ALJ did not "continue through the remaining steps to consider all of [his] mental impairments." Memo. in Supp. of Mot. to Reverse (document no. 10-1) at 9 (emphasis in original). This complaint appears to have its genesis in the fact that the ALJ did not identify by name each of the myriad diagnoses that appear in Coppola's applications and medical records. See id. (decrying the lack of "mention or discussion of" Coppola's diagnoses).

An ALJ, however, is not obliged to expressly address each of a claimant's diagnoses. Rather, as just mentioned, the ALJ's duty is to consider "the limiting effects of all the claimant's impairments," both severe and non-severe, Taylor, 2013 DNH 106, 2 (emphasis added); see also, e.g., 20 C.F.R. §§ 404.1523,

404.1545, 416.923, 416.945, and "the mere diagnosis of [a]
condition alone . . . reveals nothing about the limiting effects
on [a claimant's] ability to function." Johnson v. Astrue, No.
8:11-cv-186, 2011 WL 6130881, at *8 (M.D. Fla. Nov. 9, 2011).
Here, the ALJ noted Coppola's reported "symptoms including
depression, difficulty concentrating, racing thoughts, feeling
overwhelmed and social anxiety," as well as his inability to
focus, difficulty prioritizing tasks, and inappropriate behavior
in social situations and when dealing with authority figures.
Admin. R. at 14.  The ALJ considered these alleged effects in
light of the record evidence as a whole.  Id. at 14-18.  Coppola
does not identify any additional limiting effects of any of the
various diagnoses that, in his opinion, the ALJ should have taken
into account at step two.  The court will not conclude that the
ALJ committed any error at this step of his analysis merely
because he failed to pay lip service to those diagnoses.  Cf.
Dorman v. Astrue, No. 12-40023-TSH, 2013 WL 4238315, *11 & n.6
(D. Mass. May 21, 2013) (rejecting claimant's argument that ALJ
ignored certain diagnoses at step two where ALJ considered the
findings accompanying those diagnoses when assessing claimant's
mental limitations).

## II.  **Step three**

Coppola also contends that the ALJ erred in concluding that his impairments do not meet or medically equal the severity of any of the specific impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  In a written pre-hearing submission to the ALJ, Coppola's counsel asserted that Coppola meets or equals "the listings at 12.00," the section of the listings dealing with mental disorders.  Admin. R. at 121.  At the hearing before the ALJ, counsel narrowed her focus to listings 12.04, "affective disorders," and 12.06, "anxiety-related disorders."  See id. at 33-34 (arguing that Coppola meets "the listings for 12.04 for depression and 12.[06] for anxiety").[2]  Despite this argument, the ALJ's written decision expressly addresses only listings 12.04 and 12.09, "substance addiction disorders," and concludes that Coppola's impairments do not meet those listings.  This, unsurprisingly, provides the basis for Coppola's primary challenge to the ALJ's step three analysis:  that the ALJ also should have considered listing 12.06, and that his failure to do so constitutes reversible error.  Although the court agrees that

---

[2]The hearing transcript indicates that Coppola's counsel referred to listing 12.05, but it is clear from her remarks at the hearing that she did not mean to refer to that listing--which applies to "intellectual disability"--and in fact meant listing 12.06.

the ALJ should have addressed that listing, his failure to do so was harmless and does not require remand.

When a claimant or counsel argues before the ALJ that the claimant's impairments meet or medically equal a particular listing--as Coppola's counsel did in this case--the ALJ should ordinarily discuss that listing in the written decision, and failure to do so may be grounds for remand.  See Matern v. Astrue, No. 06-CV-695, 2009 WL 982798, at *3 (D. Utah Apr. 9, 2009) ("Having [a particular listing] brought to his attention in the hearing, the ALJ should have considered whether [claimant] met the listing, yet he failed to address in his decision whether he considered, adopted or rejected this argument."); McCall v. Heckler, No. 84-C-9980, 1985 WL 3310, at *3 (N.D. Ill. Oct. 23, 1985) ("[Claimant's] attorney's argument that [claimant] met listing 1.05 [was] before the ALJ and should have been addressed.").  Remand, however, is not a foregone conclusion in those circumstances, and "is not essential if it will amount to no more than an empty exercise." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000); see, e.g., Washington v. Astrue, No. 12-cv-1429, 2013 WL 1787180, at *9-13 (E.D. La. Mar. 13, 2013) (ALJ's failure to address specific listings despite counsel's argument that claimant met those listings did not

warrant remand because claimant did not identify evidence that he met the listings).  That is the case here.

For Coppola's impairments to meet or medically equal listing 12.06, Coppola would need to meet the requirements of paragraph A of that listing, as well as the requirements of either paragraph B or paragraph C of the listing.  See 20 C.F.R. § 404, Subpt. P, App. 1, § 12.06.  That presents an insurmountable obstacle for him.  Although he cites generally to a handful of treatment notes in the administrative record, Coppola does not explain how that evidence would support a finding that he meets paragraph A's requirements (and, after its own review, the court does not see how it could).[3]  That alone would be reason enough to conclude

---

[3] Paragraph A requires "[m]edically documented findings" of at least one of the following:

    1.    Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

        a.    Motor tension; or

        b.    Autonomic hyperactivity; or

        c.    Apprehensive expectation; or

        d.    Vigilance and scanning; or

    2.    A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

    3.    Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear,

that the ALJ's error was harmless.  See Washington, 2013 WL 1787180 at *10-11 ("Even if the ALJ erred by failing to discuss [certain listings] specifically, the error is harmless, unless [the claimant] can point to substantial medical evidence that he meets either listing.").  Even assuming, though, that Coppola meets the requirements of paragraph A, he cannot show that he meets the requirements of either paragraph B or paragraph C.

Paragraph B of listing 12.06 is identical to paragraph B of listing 12.04.  Both require that the claimant's symptoms result in at least two of the following:

> 1.   Marked restriction of activities of daily living; or
>
> 2.   Marked difficulties in maintaining social functioning; or

---

> terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4.   Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5.   Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress[.]"

20 C.F.R. § 404, Subpt. P, App. 1, § 12.06.A.  The records Coppola cites in support of his argument at step three do not appear to contain any findings approaching the severity of these symptoms.  In fact, those records are inconsistent with the existence of certain symptoms listed in paragraph A.  See, e.g., Admin. R. at 279 (noting that Coppola "denies obsessions"); id. at 306 (Coppola "denies any panic attacks").

>   3.   Marked difficulties in maintaining concentration, persistence, or pace; or
>
>   4.   Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. 1, §§ 12.04.B, 12.06.B.  In concluding that Coppola does not meet the requirements of listing 12.04, the ALJ specifically addressed paragraph B, finding that Coppola's impairments result in only mild or moderate limitations in the first three categories and that Coppola has had no episodes of decompensation.  These findings, which Coppola does not challenge on appeal (or even acknowledge in his memorandum), and which are supported by substantial evidence, likewise preclude a conclusion that the criteria of paragraph B of listing 12.06 are satisfied.

Paragraph C of listing 12.06 requires that the claimant's impairments result "in complete inability to function independently outside the area of one's home."  Id. § 12.06.C. Coppola makes no claim that this paragraph applies, and the record evidence belies any such claim.  Among other things, as the ALJ found in his decision, Coppola reported that he was able to shop for himself and manage his finances and that he used a computer at the local library, and he held a part-time job in a grocery store, where he interacted with others.  This evidence, and the ALJ's resultant finding, demonstrates that Coppola's

11

anxiety does not render him entirely incapable of functioning independently in public (though it may arguably result in some difficulty doing so).  Because Coppola has not identified any evidence that he meets the requirements of listing 12.06, any error by the ALJ in failing to discuss that listing in his written decision is harmless and does not warrant remand.[4]

---

[4]Coppola's memorandum of law also bemoans the fact that the ALJ's written decision did not consider or discuss listings 12.03, "psychotic disorders," and 12.08, "personality disorders." The court is reluctant to conclude that the ALJ erred by failing to expressly address these listings when Coppola's counsel chose to focus the ALJ's attention elsewhere.  Cf. Dubois v. Astrue, 2012 DNH 109, 13 n.4 (declining to ascribe error to ALJ for failing to independently "seize[] upon and pursue[]" argument that counsel did not make).  Again, though, even if the ALJ erred by failing to specifically address those listings in his decision, that error was harmless.

For a claimant's impairments to meet or equal listing 12.08, the same paragraph B criteria discussed above must be satisfied, so the ALJ's finding that those criteria are not met here--which, again, Coppola does not challenge on appeal--precludes the conclusion that listing 12.08 applies to Coppola.  Those same paragraph B criteria apply to listing 12.03, which alternatively may be met by satisfying the same paragraph C criteria that apply to listing 12.04.  The ALJ expressly considered those criteria in his written decision as well, concluding that there was "no evidence of [their] presence."  Admin. R. at 13.  Once again, Coppola does not challenge that finding on appeal, or identify any evidence to the contrary.  At any rate, if Coppola believes the ALJ should have considered these listings, he will have ample opportunity to make that argument on remand.

As a final aside, the court notes Coppola's assertions that the ALJ's step 3 discussion "contains no analysis of the medical record" and "no citations to the record evidence."  Memo. in Supp. of Mot. to Reverse (document no. 10-1) at 10.  While true, this is irrelevant.  The ALJ's RFC assessment contains a lengthy analysis of the medical record, replete with record citations.

## III. __Step Four__

Coppola maintains that the ALJ committed several errors in evaluating his RFC and determining that he was capable of performing his past relevant work.  He asserts that the ALJ (1) should have, in the written decision, explicitly addressed the opinion of one of Coppola's treating sources that Coppola was disabled; (2) should not have relied upon the opinion of the testifying medical expert; (3) improperly weighed other medical evidence in the record; (4) failed to analyze the record in accordance with agency guidance for evaluating cases involving drug addiction and alcoholism; and (5) improperly concluded that Coppola's jobs as a landscape laborer and stocker qualified as "past relevant work."  While Coppola's last four assignments of error are meritless, the court agrees with the first, and thus remands this case to the ALJ.

### A.   __Treating source's opinion of disability__

Coppola argues that the ALJ's analysis of his residual functional capacity was "incomplete" because the ALJ's written decision contained no discussion of an opinion rendered by Dr.

---

See Admin. R. at 14-18.  The ALJ's step 3 discussion makes clear that the ALJ relied upon this analysis in making findings at step 3.  See id. at 13-14 (citing multiple times to discussion of medical evidence in residual functional capacity assessment). Nothing more was required.

Keri Lemmond, Coppola's treating psychiatrist, that Coppola was disabled and unable to "do any form of work" due to post-traumatic stress disorder, bipolar disorder, generalized anxiety disorder, social phobia, and polysubstance dependence.  Admin. R. at 365.  The Commissioner concedes that the ALJ did not discuss Dr. Lemmond's opinion, but maintains that the ALJ committed no error because Dr. Lemmond's opinion was on an "issue reserved to the Commissioner" and thus could not have altered the ALJ's analysis.  The court does not share the Commissioner's view.

The Commissioner is correct that a medical opinion that a claimant is "'disabled' or 'unable to work'", even if it is from a treating source like Dr. Lemmond, is considered an opinion on an issue "reserved to the Commissioner" and is not entitled to "special significance."  20 C.F.R. §§ 404.1527(d), 416.927(d); see also Social Security Ruling ("SSR") 96-5p, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183, at *2 (S.S.A. 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").  That does not mean, however, that an ALJ need not take notice of such an opinion.  To the contrary, the ALJ "must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."

14

SSR 96-5P, 1996 WL 374183, at *2.  Such opinions "must never be ignored," and if the record contains a treating source's opinion on an issue reserved to the commissioner, the ALJ's decision "must explain the consideration given to the treating source's opinion(s)."  Id. at *3, *6.

The ALJ therefore erred in omitting any discussion of Dr. Lemmond's opinion from his written decision.  This omission is critical:  without such a discussion, "this court cannot know whether the ALJ considered and rejected the [opinion] or whether he merely overlooked it."  Dwyer v. Astrue, 2012 DNH 105, 11 (citation and internal quotation marks omitted).  The Commissioner nonetheless suggests that Dr. Lemmond's opinion "does not warrant any further consideration by the ALJ" because it provides "no assessment of [Coppola's] functional limitations or what activities he could still perform despite his impairments."  Memo. in Supp. of Mot. to Affirm (document no. 13-1) at 9.  But it is not the task of this court to re-weigh the record evidence and "articulate for the first time at the appeals stage good reasons for rejecting a treating source's opinion."[5]

---

[5]This court observes, as Judge McAuliffe did in Bergeron, that in certain circumstances--e.g., where a treating source's relationship with the claimant is "negligible"--an ALJ's "failure to explain the consideration given to a treating source's opinion on an issue reserved to the Commissioner can be a harmless error that does not require remand."  2009 DNH 174, 11 n.2.  As in

Bergeron v. Astrue, 2009 DNH 174, 12 (citation and internal
quotation marks omitted) (McAuliffe, J.).  This case must be
remanded to the ALJ so he can consider Dr. Lemmond's opinion and,
if he rejects it, explain his reasons for doing so.  See id. at
10-12.

### B.   Medical expert testimony

Coppola also argues that the ALJ erroneously relied on the
opinion of Dr. Stuart Gitlow, a medical expert ("ME") who
testified at the administrative hearing.  The ALJ gave "great
weight" to Dr. Gitlow's opinion that the symptoms of Coppola's
mental impairments do not impose any significant limitations
(though the ALJ rejected Dr. Gitlow's opinion that Coppola does
not have a medically determinable mood disorder).

Coppola's objections to the ALJ's reliance on Dr. Gitlow's
testimony are twofold.  First, Coppola says, the ALJ deviated
from the requirements imposed by the Hearings, Appeals and
Litigation Law Manual ("HALLEX"), an internal SSA procedural
manual, in taking Dr. Gitlow's testimony.  This deviation from
protocol, Coppola argues, deprived him of a fair hearing and
necessitates remand.  Second, Coppola asserts that Dr. Gitlow's
testimony was "unreliable" and "substantially deviated from the

Bergeron, however, this case does not present such circumstances.

medical record," and was thus not entitled to the great weight accorded it by the ALJ.  Neither argument is persuasive.

In support of his first objection, Coppola relies primarily upon HALLEX § I-2-5-39.  That section provides, in relevant part:

> During the opening statement, the ALJ must explain why ME testimony is necessary.  The ME may attend the entire hearing, but this is not required.  Before the ME testifies, the ALJ must:
>
> •   ensure on the record that the ME has examined all medical and other evidence of record;
>
> •   ensure that the record contains an accurate statement of the ME's professional qualifications;
>
> •   give the claimant and the representative an opportunity to ask the ME questions about his or her professional qualifications; and
>
> •   summarize the opening statement or relevant testimony on the record if the ME was not present.

HALLEX § I-2-5-39, www.ssa.gov/OP_Home/hallex/I-02/I-2-5-39.html (last visited Feb. 3, 2014).  As Coppola points out, the ALJ did not explain on the record why Dr. Gitlow's testimony was necessary, and the record contains no statement of Dr. Gitlow's professional qualifications.  Both these omissions contravened § I-2-5-39.[6]

---

[6]Coppola suggests that the ALJ also failed to comply with § I-2-5-39 by not providing him with Dr. Gitlow's qualifications and opinions prior to the hearing, by permitting Dr. Gitlow to testify before Coppola himself did, and by asking Dr. Gitlow "general questions" at the hearing rather than sending Dr. Gitlow written interrogatories prior to the hearing.  Memo. in Supp. of

17

That the ALJ did not comply with the letter of HALLEX does not, however, require remand.  It is an open question in this circuit whether an ALJ's failure to comply with HALLEX can ever constitute reversible error.  Our court of appeals has never addressed that issue, and other district courts in this circuit have arrived at divergent conclusions.  Compare Green v. Astrue, No. 11-cv-11711, 2013 WL 636962, at *10 n.5 (D. Mass. Feb. 20, 2013) (HALLEX "has no legal force, and it does not bind the SSA") and Mason v. Astrue, No. 08-cv-11957, 2010 WL 1236305, at *6 n.7 (D. Mass. Mar. 5, 2010) ("HALLEX provisions . . . lack the force of law and create no judicially-enforceable rights.") with Dawes v. Astrue, No. 11-cv-272, 2012 WL 1098449 (D. Me. Mar. 30, 2012) (ALJ's failure to comply with HALLEX warranted remand) and E.E.P. ex rel. Palmer v. Barnhart, No. 03-cv-246, 2004 WL 1529262 (D. Me. June 24, 2002) (same).  The judges of this court have never

---

Mot. to Reverse (document no. 10-1) at 12-14.  Section I-2-5-39, however, does not provide any guidance on any of these practices, let alone prohibit them.

In a single sentence in his memorandum, Coppola also claims that the ALJ's "general questions" of Dr. Gitlow were "beyond" the scope of § I-2-5-34 of HALLEX (which outlines circumstances in which an ALJ may obtain ME testimony).  Id. at 13.  Exactly how the ALJ's questions exceeded that section's scope is not immediately apparent to the court, and Coppola has made no effort to explain his position, so the court considers this argument waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

had occasion to resolve this issue directly, see Sibley ex rel. Sibley v. Astrue, 2013 DNH 022, 29 n.10 (Barbadoro, J.); Platon v. Astrue, No. 11-cv-495, 2012 WL 5493620, at *5-6 (D.N.H. Nov. 13, 2012) (DiClerico, J.), and this order need not resolve it, either.  Even those courts to conclude that an ALJ's failure to adhere to HALLEX can constitute reversible error have required a claimant to demonstrate that he or she suffered some prejudice from the ALJ's misstep before remanding.  See Sibley, 2013 DNH 022 at 29 n.10.  Coppola does not argue that either of the ALJ's deviations from § I-2-5-39 caused him any prejudice; to the contrary, he concedes that "[t]hese omissions by themselves were not problematic."  Memo. in Supp. of Mot. to Remand (document no. 10-1) at 13.  The ALJ's deviation from HALLEX in taking Dr. Gitlow's testimony thus does not require remand.

Coppola's second objection, that Dr. Gitlow's testimony was "unreliable," likewise falls short.  This assessment of Dr. Gitlow's reliability stems from Coppola's belief that "Dr. Gitlow's testimony substantially deviated from the medical record."  Id. at 14.  Yet nothing Coppola points to in support of this claim shows any deviation from the medical record, let alone a deviation that could fairly be termed "substantial."

By way of example, Dr. Gitlow testified that to diagnose Coppola with a psychiatric disorder, he would have to observe a

period of time in which Coppola was "demonstrably clear of
psychoactive substances" such as drugs and alcohol, and noted
that he was unable to do so because all of the toxicology screens
in the record were positive. Admin. R. at 56-57. In an effort
to undermine this testimony, Coppola points out that on several
occasions, his mental health providers did not order toxicology
screens. This is, however, beside the point. Dr. Gitlow
testified about, and rendered his opinion based upon, the
toxicology screens that Coppola's providers actually <u>did</u> perform.
His testimony was entirely consistent with the results of those
tests. Similarly, the fact that Coppola's providers chose not to
perform those tests on some occasions does nothing to undermine
Dr. Gitlow's testimony that the standard of care published by the
American Psychiatric Association ordinarily requires such tests.[7]

As yet another example, Coppola claims that Dr. Gitlow
incorrectly testified that Coppola was not "forthcoming regarding
his substance abuse" during an October 2011 visit with one of his
providers. <u>See</u> Admin. R. at 38-39. During that visit, Coppola

---

[7]Coppola asserts that his providers did not perform such
tests because he did not show any signs of substance abuse on his
visits with them. This is rank speculation that finds no support
in the record. Even assuming, though, that Coppola's providers
did not observe any signs of substance abuse during his visits,
that does not amount to evidence that Coppola was "demonstrably
clear of psychoactive substances," such that it would undermine
Dr. Gitlow's testimony.

informed the provider that (1) he had "not had any kind of alcohol since March and even before that he used alcohol very infrequently" and (2) he had not used marijuana, cocaine, or ecstasy "for more than a year." Id. at 463.  In a remarkable feat of disingenuousness, Coppola points to the fact that he disclosed his alcohol use in March as evidence that he was, in fact, forthcoming about his substance abuse.  Yet, as Dr. Gitlow pointed out in his testimony, Coppola tested positive for cannabis during a March 2011 visit to the emergency room--belying his claim to his provider that he had not used marijuana in over a year--and Coppola's blood alcohol level was tested at 0.313 during another emergency room visit in April 2011--belying his claim that he had not used alcohol since March.  See id. at 459-60.  So Dr. Gitlow's testimony that Coppola was not forthcoming about his substance abuse was amply supported by the medical record.

In short, neither the ALJ's failure to adhere to HALLEX in taking Dr. Gitlow's testimony nor Coppola's characterization of that testimony as "unreliable" provides grounds for remand.[8]

---

[8]Coppola also asserts that Dr. Gitlow was "biased," citing a column he wrote that deals with the evaluation of disability claimants who have tested positive for cannabinoids in light of the recent emergence of medical marijuana.  Contrary to Coppola's argument, however, the court sees nothing in the article that even faintly suggests bias on Dr. Gitlow's part or otherwise

**C.    Other medical evidence**

Coppola contends that the ALJ also erred in his treatment of other medical opinions in the record.  Specifically, Coppola claims that the ALJ, in evaluating the medical opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927, erred in giving "significant weight" to the opinion of Dr. Patricia Salt, a state agency medical consultant, and should have attributed greater weight to the opinions of Dr. Stephanie Lynch (another state agency consultant) and Coppola's treating sources at Seacoast Mental Health Center ("SMHC").  None of Coppola's objections to the ALJ's analysis or this opinion evidence are persuasive.

Coppola argues that the ALJ should have accorded less weight to Dr. Salt's opinion because she "had virtually no records" at the time she rendered that opinion.  Memo. in Supp. of Mot. to Reverse (document no. 10-1) at 19-20.  He cites several cases holding that when a medical source had only an incomplete medical record at her disposal at the time she rendered her opinion, the ALJ cannot "rel[y] exclusively" on that opinion.  Padilla v. Barnhart, 186 Fed. Appx. 19, 22 (1st Cir. 2006); see also Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007) (opinion of medical consultant who examined only one-third of

---

undermines his credibility as a witness.

22

medical record was not, by itself, sufficient evidence to support ALJ's finding of no disability); Russell v. Astrue, 742 F. Supp. 2d 1355, 1378-79 (N.D. Ga. 2010) (similar); L.B.M. ex rel. Motley v. Astrue, No. 08-cv-1354, 2010 WL 1190326, at *12-*13 (S.D. Ind. Mar. 23, 2010) (similar).  As Coppola acknowledges, though, the ALJ did not rely exclusively on Dr. Salt's opinion.  Rather, the ALJ relied only in part upon that opinion, and relied primarily upon Dr. Gitlow's opinion, which was rendered with the benefit of the entire medical record.  The cases Coppola cites are thus inapposite.  Cf., e.g., Guisti v. Astrue, No. 11-cv-360, 2012 WL 4034512, at *10-11 (D.R.I. Aug. 22, 2012) (explaining that ALJ's partial reliance on opinion of medical consultants who did not review entire medical record was inconsequential because ALJ relied primarily on testimony of expert who did examine the entire record).

To be sure, the completeness of the record before a medical source is a factor an ALJ should consider when determining the amount of weight to give to the opinions of that source.  See 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (identifying "the extent to which an acceptable medical source is familiar with other information in your case record" as a "relevant factor" that SSA considers in deciding the weight to give the source's opinion).  Yet it is only one factor out of many, and the fact that an

opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion.  See Guisti, 2012 WL 4034512 at *10.  Coppola identifies no other deficiency in the ALJ's treatment of Dr. Salt's opinion, and the record reveals that the ALJ, in accordance with his duties under §§ 404.1527 and 416.927, relied on Dr. Salt's opinion only insofar as that opinion was, in his estimation, consistent with other evidence of record (and, indeed, discounted that opinion to the extent it conflicted with other record evidence--including evidence tendered after Dr. Salt's review, see Admin. R. at 17 (rejecting Dr. Salt's opinion that Coppola had only mild difficulties in maintaining concentration, persistence, or pace)).

Ironically, Coppola segues seamlessly into arguing that the ALJ should have accorded greater weight to Dr. Lynch's opinion, although Dr. Lynch had even less of a record at her disposal than Dr. Salt did at the time she rendered her opinion.  As Coppola notes, Dr. Lynch examined him, and SSA regulations provide that the opinions of examining sources are generally entitled to more weight than those of non-examining sources.  See 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).  This rule is, however, not inflexible, and, again, the nature of the relationship between a source and the claimant is but one of several factors an ALJ must

24

consider when determining the amount of weight to give to that source's opinions.  The ALJ must also consider the extent to which the source identifies evidence such as "medical signs and laboratory findings" in support of her opinions, the quality of the source's explanation for those opinions, and the opinions' consistency with the record as a whole.  Id. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

Here, the ALJ, in according only "some weight" to Dr. Lynch's opinion, noted that it was not "well supported by the objective evidence obtained during the examination," including Coppola's perfect 30/30 score on a mini-mental status examination and "his rapid performance of serial 7 subtractions."  Admin. R. at 15-16.  The ALJ observed that Dr. Lynch's opinion appeared to be based almost exclusively on Coppola's subjective allegations, although those allegations were inconsistent with Dr. Lynch's own observations regarding Coppola's grooming, appearance, mood, and reported activities of daily living.  Id.  The ALJ also noted that Coppola's subsequent treatment records undermined Dr. Lynch's opinion.  Id. at 16.  While Coppola argues that the ALJ, in discounting Dr. Lynch's opinion in this manner, exceeded "his competence as a lay person" and "made evaluative interpretations permitted only by medical experts," Memo. in Supp. of Mot. to Reverse (document no. 10-1) at 21, there is nothing inappropriate

25

about an ALJ comparing "a medical-source opinion with a
claimant's medical records, to determine whether the opinion is
consistent with those records." Widlund v. Astrue, No. 11-cv-
371, 2012 WL 1676990, at *9-*10 (D.N.H. Apr. 16, 2012).  As the
Commissioner points out, moreover, even if squaring Dr. Lynch's
opinion with her observations and the objective evidence she
obtained during her examination were a matter reserved to medical
experts, the ALJ's conclusion was supported by two medical
experts--Drs. Gitlow and Salt--both of whom reviewed Dr. Lynch's
report and found it internally inconsistent.  See Admin. R. at
53-54, 300.

     Nor did the ALJ err in giving only "some weight" to the
opinions of Coppola's sources at SMHC.  The ALJ supportably found
(based upon Dr. Gitlow's testimony) that the opinion of Coppola's
therapist at SMHC, David Ceglia, was inconsistent with the
objective observations made during Coppola's visits, and "not
fully reliable" due to Coppola's lack of candor regarding his
prior drug use.  Id. at 17; see also Part III.B, supra.  Coppola
makes no effort to explain how the ALJ misweighed Ceglia's
opinion, apart from merely invoking the rule that a treating
source's opinion is typically entitled to more weight than that
of other sources.  As a licensed mental health counselor,
however, Ceglia does not qualify as a treating source under SSA

26

regulations.  See SSR 06-03p, Titles II and XVI: Considering
Opinions and Other Evidence from Sources Who Are Not "Acceptable
Medical Sources" in Disability Claims, 2006 WL 2329939, at *2
(S.S.A. 2006) ("only 'acceptable medical sources' can be
considered treating sources"); 20 C.F.R. §§ 404.1513(a),
416.913(a) (defining "acceptable medical sources").

     No doubt recognizing this, Coppola attempts to attribute
Ceglia's opinion regarding Coppola's functional limitations to
Dr. Edward Drummond, a psychiatrist who cosigned Ceglia's intake
summary for Coppola.  Yet Dr. Drummond does not qualify as a
treating source, either, because apart from this signature--which
itself does not even indicate that Dr. Drummond ever examined
Coppola--there is no other evidence in the record that indicates
that he saw Coppola again, let alone had the type of "ongoing
treatment relationship" with Coppola that would be required to
make him a "treating source." 20 C.F.R. §§ 404.1502, 416.902;
see Graham v. Barnhart, 2006 DNH 057, 14-15.  So the general rule
that allots greater weight to the opinions of treating sources--
which, again, is all that Coppola cites to support his claim that
the ALJ erred in analyzing the SMHC opinions--is inapplicable
here.

     The ALJ committed no error in his analysis of the opinions
of Salt, Lynch, and Ceglia.

27

**D.   Social Security Ruling 13-2p**

Coppola argues that the ALJ erred by failing to apply SSR 13-2p, Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 2013 WL 621536 (S.S.A. 2013), a recent Social Security Ruling that explains the SSA's policies for considering drug addiction and alcoholism.  In criticizing the ALJ for not relying upon this ruling, however, Coppola overlooks a critical fact:  the ALJ rendered his written decision on November 16, 2011, but the SSA did not issue SSR 13-2p until February 20, 2013--over one year later.  (Indeed, the SSA had not yet issued SSR 13-2p at the time the Appeals Council denied Coppola's request for review of the ALJ's decision in October 2012.)  It therefore would have been impossible for the ALJ to apply that ruling when rendering his decision.  The court will not fault the ALJ for his failure to apply a Social Security Ruling that postdated the final agency action in this case.[9]  Cf. Parker ex rel. Parker v. Comm'r, Soc. Sec. Admin., No. 13-cv-19, 2014 WL 220705, at *9-*10 (D. Me. Jan. 21, 2014) (substantially identical case).

---

[9]Of course, the ALJ likely will have to apply that ruling on remand.

**E.   Coppola's past relevant work**

After taking testimony from a vocational expert ("VE") at the hearing, the ALJ concluded that, in light of his RFC, Coppola retains the ability to work as a landscape laborer or a stocker--jobs that the ALJ found to be Coppola's "past relevant work" within the meaning of the SSA regulations.  Coppola argues that the ALJ's conclusion was erroneous as to both jobs.  Coppola is mistaken.

Coppola's primary argument is that neither job "rose to the level of past relevant work" because the jobs were "sporadic" and "seasonal."  Memo. in Supp. of Mot. to Reverse (document no. 10-1) at 23.  The court questions whether Coppola's work as a stocker, which he had been doing for about five months as of the date of the hearing, see Admin. R. at 67, can fairly be called "sporadic."  In any event, though, neither the sporadic nor the seasonal nature of a job prevents it from being considered "past relevant work."  Rather, "past relevant work" is defined to be "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  Thus, even if a claimant performs a job "sporadically" or only at certain times of year, it may still "rise to the level" of "past relevant work" if these criteria are

29

met.  See, e.g., Reeder v. Apfel, 214 F.3d 984, 989 (8th Cir.
2000) (holding that claimant's seasonal work as a fruit picker
qualified as past relevant work); Stephenson v. Halter, No. 00-
cv-391, 2001 WL 799600, *7 (D.N.H. June 21, 2001) (rejecting
claimant's argument that prior employment as a secretary could
not be considered past relevant work due to its sporadic nature).

Coppola is correct that one of the SSA's rulings provides
that "[a]n individual who has worked only sporadically or for
brief periods of time during the 15-year period, may be
considered to have no relevant work experience." SSR 82-62,
Titles II and XVI: A Disability Claimant's Capacity to Do Past
Relevant Work, In General, 1982 WL 31386, at *1 (S.S.A. 1982).
As other courts have explained, however, this is simply a
reference to the durational requirement discussed later in the
ruling, see, e.g., Jozefowicz v. Heckler, 811 F.2d 1352, 1355-56
(10th Cir. 1987), i.e., that the period of time during which the
claimant performed a job was "sufficient for the worker to have
learned the techniques, acquired information, and developed the
facility needed for average performance in the job situation,"
SSR 82-62, 1982 WL 31386, at *2.  Coppola makes no argument that
he did not perform the jobs of landscape laborer and stocker long
enough to meet this requirement, and the record evidence is

inconsistent with such an argument in any event, as the ALJ specifically found.  See Admin. R. at 18-19.

Coppola also argues that the ALJ misheard the VE's testimony regarding his ability to perform his previous work as a stocker. According to Coppola, the VE "testified that the only part of the job of 'stocker' that the claimant could do . . . was the cart pusher/retriever part."  Memo. in Supp. of Mot. to Reverse (document no. 10-1) at 23.  Coppola has it exactly wrong.  The VE testified that Coppola could perform the job of a stocker, but would not be able to perform the entirely separate job of a cart pusher/retriever (another of Coppola's past jobs) as that job is typically performed.  See Admin. R. at 82.  The ALJ committed no error in concluding that Coppola's jobs as a landscape laborer and stocker qualified as "past relevant work."

## IV.  **Step Five**

Finally, Coppola contends that the ALJ erred in finding, at step five of the analysis, that he retains the ability to perform the jobs of kitchen helper, groundskeeper, and hand packer.  The Dictionary of Occupational Titles ("DOT") rates those jobs as requiring "02 Level Reasoning Development," i.e., the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with

problems involving a few concrete variables in or from standardized situations."  U.S. Dep't of Labor, Emp't & Training Admin., Dictionary of Occupational Titles, Vol. II, at 1011 (4th ed., rev. 1991).  Coppola maintains this requirement is incompatible with the ALJ's assessment that he is "limited to performing simple routine repetitive tasks."  Admin. R. at 14.

Coppola's argument is not without some merit.  As this court has previously noted, there is an "inherent conflict between skill levels as defined in the social security regulations . . . and in the DOT."  McGrath v. Astrue, 2012 DNH 060, 23 (internal citation omitted).  Specifically,

> the Social Security regulations and the DOT use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties.  The regulations divide such abilities into only two categories--"short and simple instructions" and "detailed" or "complex" ones--whereas the DOT uses a more graduated scale ranging from one to six that does not easily accommodate itself to the regulations' simple/complex dichotomy.  Thus, no one-to-one parallel can be found between "simple" as it is used under the regulations and the DOT's requirements.

Id. at 24 (quoting Auger v. Astrue, 792 F. Supp. 2d 92, 95 (D. Me. 2011)).  Coppola's challenge to the ALJ's step five finding arises from this conflict, raising the question "whether a task may be 'simple' under the regulations and still involve the kind of 'detailed' tasks required under Level 2 reasoning."  Id. (citation and internal quotation marks omitted).

This court, noting the unsettled nature of this question in this circuit and the existence of divergent authority, found it unnecessary to directly answer this question in McGrath.  See id. at 24-27.  So too here:  given the court's conclusion that the ALJ erred in determining Coppola's RFC, see Part III.A, supra, this case must be remanded to the ALJ.  If it becomes necessary on remand, the ALJ should, out of an abundance of caution, address Coppola's reasoning ability under both the SSA regulations and the DOT's definitions.

Coppola also raises two other challenges to the ALJ's step five conclusion, which warrant only brief attention.  First, he argues that the ALJ's finding that he is able to "tolerate only occasional interactions and no cooperative tasks with coworkers" precludes the conclusion that he can perform the kitchen helper, groundskeeper, and hand packer jobs.  That argument, however, stems from Coppola's assertion that the DOT definitions for those jobs "reveal[] that interaction and cooperation with others is required of all the jobs," Memo. in Supp. of Mot. to Remand (document no. 10-1) at 26, an assertion that is, quite simply, incorrect.  Second, he points out--correctly, this time--that the ALJ's conclusion that he is capable of performing the job of kitchen helper is contrary to the VE's testimony.  See Admin. R. at 83 (vocational expert testified "I don't believe the job of a

kitchen helper could be performed" if, as the ALJ found, Coppola was limited to "occasional interaction with coworkers").  That error alone, however, would not ordinarily require remand given the ALJ's concurrent conclusion that Coppola is also capable of performing the groundskeeper and hand packer jobs.  See McGrath, 2012 DNH 060 at 27 ("A single occupation is sufficient to meet the commissioner's burden at Step 5 of the evaluation process."). In any event, the ALJ will have the opportunity to correct this error on remand.

**V.   Conclusion**

For the foregoing reasons, Coppola's motion to reverse the ALJ's decision[10] is GRANTED, and the Commissioner's motion to affirm it[11] is DENIED.  See 42 U.S.C. § 405(g).  The clerk shall enter judgment accordingly and close the case.

Coppola's counsel is reminded that pursuant to LR 7.1(a)(3), memoranda in support of dispositive motions may not exceed 25 pages.  Coppola's overlong memorandum in support of his motion to reverse violates this rule.  The violation is de minimis and warrants no remedial action, but counsel is cautioned that the court expects her adherence to L.R. 7.1(a)(3) in the future.

---

[10]Document no. 10.

[11]Document no. 13.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  February 21, 2014

cc:  Janine Gawryl, Esq.
     T. David Plourde, Esq.